UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>UR MENDOZA JADDOU,<br><br>  Defendant. | Case No. 23-cv-02720-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

Defendant Ur M. Jaddou, Director of United States Citizenship and Immigration Services, moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Impossible Foods Inc.'s first claim for relief. [Docket No. 12.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, Defendant's motion is granted.

**I.     BACKGROUND**

   **A.     Plaintiff's Allegations**

   In April 2022, Plaintiff Impossible Foods Inc. filed an I-140 petition to classify its employee, Seshadri Gowrishankar, as an "outstanding professor or researcher" for purposes of an immigrant visa petition pursuant to 8 U.S.C. § 1153(b)(1)(B)(i). [Docket No. 3 (Compl.) ¶ 16.] United States Citizenship and Immigration Services ("USCIS") issued a Notice of Intent to Deny the petition in May 2022 and Plaintiff submitted additional evidence and legal argument in response. *Id.* at ¶¶ 19, 20, Ex. B. USCIS denied Plaintiff's petition in July 2022, finding that Plaintiff failed to demonstrate by a preponderance of the evidence that Gowrishankar "is recognized internationally as outstanding in the academic field." Compl. ¶ 19, Ex. C at 5.

   Plaintiff alleges that USCIS reviewed its I-140 petition under the two-step framework set

1  forth in USCIS's Policy Manual to determine eligibility for the outstanding professor or researcher
2  classification, known as the "*Kazarian* policy." *See* Compl. ¶ 14, 26.  It filed the complaint in
3  June 2023 alleging three claims challenging the *Kazarian* policy and USCIS's denial of its
4  petition.  In claim one, Plaintiff challenges the implementation of the *Kazarian* policy on the
5  ground that USCIS improperly adopted the policy outside of the formal rulemaking provisions
6  mandated in the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, by not undergoing a
7  notice-and-comment period.  Compl. ¶¶ 48-94.  Plaintiff asks the court to declare the *Kazarian*
8  policy ultra vires or otherwise in violation of the Immigration and Nationality Act and the APA
9  and enjoin Defendant from applying the *Kazarian* policy.

In claim two, Plaintiff alleges that USCIS's denial of its I-140 petition was arbitrary, capricious, and contrary to law in violation of the APA.  *Id*. at ¶¶ 95-103.  In claim three, Plaintiff alleges that Defendant violated the APA by erroneously applying a clear and convincing evidence standard of proof instead of a preponderance of the evidence standard of proof in denying its I-140 petition.  *Id*. at ¶¶ 104-50.  Defendant only moves to dismiss the first claim.

### B.     Statutory Framework and the *Kazarian* Policy

The Immigration and Nationality Act ("INA") allocates visas for noncitizens with demonstrated "extraordinary ability in the sciences, arts, education, business, or athletics," "[o]utstanding professors and researchers," and noncitizens with "exceptional ability in the sciences, arts, or business."  8 U.S.C. § 1153(b)(1)(A), (B); 1153(b)(2)(A).  As noted, Plaintiff filed a Form I-140 seeking permanent immigration status for its employee, Gowrishankar, as an "outstanding professor or researcher."  In relevant part, the INA sets forth the following qualifications for outstanding professors and researchers: the noncitizen must (1) be "recognized internationally as outstanding in a specific academic area"; (2) have "at least 3 years of experience in teaching or research in the academic area"; and (3) "seek[] to enter the United States . . . to conduct research in the [academic] area with a . . . private employer" that "employs at least 3 persons full-time in research activities and has achieved documented accomplishments in an academic field."  8 U.S.C. § 1153(b)(1)(B).

A United States employer may file an I-140 petition to seek permanent immigration status

for an outstanding professor or researcher. 8 C.F.R. § 204.5(i)(1). The petitioner must submit the following "initial evidence" along with the petition:

> (i) Evidence that the professor or researcher is recognized internationally as outstanding in the academic field specified in the petition. Such evidence shall consist of at least two of the following:
>
> > (A) Documentation of the alien's receipt of major prizes or awards for outstanding achievement in the academic field;
> >
> > (B) Documentation of the alien's membership in associations in the academic field which require outstanding achievements of their members;
> >
> > (C) Published material in professional publications written by others about the alien's work in the academic field. Such material shall include the title, date, and author of the material, and any necessary translation;
> >
> > (D) Evidence of the alien's participation, either individually or on a panel, as the judge of the work of others in the same or an allied academic field;
> >
> > (E) Evidence of the alien's original scientific or scholarly research contributions to the academic field; or
> >
> > (F) Evidence of the alien's authorship of scholarly books or articles (in scholarly journals with international circulation) in the academic field;

8 C.F.R. § 204.5(i)(3)(i). If those evidentiary standards "do not readily apply, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." 8 C.F.R. § 204.5(i)(3)(ii). The petitioner must also submit evidence that the noncitizen "has at least three years of experience in teaching and/or research in the academic field" and "[a]n offer of employment from a prospective United States employer." 8 C.F.R. § 204.5(i)(3)(iii), (iv).

On December 22, 2010, USCIS issued Policy Memorandum PM-602-0005.1, "Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual* (*AFM*) Chapter 22.2, *AFM* Update AD11-14." Compl. Ex. A (Policy Memo). It states that "[t]his Policy Memorandum (PM) provides guidance regarding the analysis that [USCIS] officers who adjudicate these petitions should use when evaluating evidence submitted in support of Form I-140, Immigrant Petition for Alien Worker, filed for . . . Aliens of Extraordinary Ability under section 203(b)(1)(A) of the [INA]; Outstanding Professors or Researchers under section

1  203(b)(1)(B) INA; and Aliens of Exceptional Ability under section 203(b)(2) INA." Policy Memo
2  1.
3        In the Policy Memo, USCIS explains that it adopts the "two-part adjudicative approach to
4  evaluating evidence submitted in connection with petitions for aliens of extraordinary ability"
5  from *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010). Policy Memo 3. In *Kazarian*, the Ninth
6  Circuit reviewed the denial of an "extraordinary ability" visa. 596 F.3d at 1117. The court
7  considered four of the regulatory criteria applicable to petitions for extraordinary ability. It
8  concluded that the Administrative Appeals Office ("AAO") erred in its evaluation of two of the
9  four criteria by imposing requirements beyond those set forth in the applicable regulation. *Id*. at
10 1121-22. However, the court noted that the AAO's analysis of both criteria "might be relevant to
11 the final merits determination" of whether the petitioner had the requisite extraordinary ability.
12 *Id*.; *see* Policy Memo 3 (discussing *Kazarian*).
13       USCIS's Policy Memo sets forth the following approach: at the first step, USCIS
14 determines whether the petitioner submitted the required "initial evidence" listed in the applicable
15 regulation. At the second step, USCIS conducts a "final merits determination" "on the entire
16 petition" to determine whether the evidence "is sufficient to demonstrate that the beneficiary or
17 self-petitioner meets the required high level of expertise." *Id.* This approach applies to evaluating
18 petitions for outstanding professors or researchers and noncitizens of exceptional ability as well as
19 petitions for noncitizens of extraordinary ability. *Id*. at 4.
20       The Policy Memo includes the following guidance with respect to evaluating petitions for
21 outstanding professors or researchers at the second step final merits determination:

> Meeting the minimum requirement of providing at least two types of initial evidence does not, in itself, establish that the alien in fact meets the requirements for classification as an outstanding professor or researcher . . . [t]he quality of the evidence also must be considered. In Part Two of the analysis in each case, USCIS officers should evaluate the evidence together when considering the petition in its entirety to make a final merits determination of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the alien is recognized internationally as outstanding in a specific academic area. . . .

28 *Id*. at 20.

4

1        Additionally, the Policy Memo "remind[s]" USCIS officers that the applicable standard of proof for evaluating petitions filed for noncitizens of extraordinary ability, outstanding professors or researchers, and noncitizens of exceptional ability is the "preponderance of the evidence" standard. *Id*. at 4.

### C. Defendant's Motion

Defendant now moves pursuant to Rule 12(b)(6) to dismiss claim one on the ground that it fails as a matter of law because USCIS's adoption of the *Kazarian* policy, as set forth in the Policy Memo, was lawful and did not require a notice-and-comment period. It also moves to dismiss claim one as time-barred. Claims two and three are not at issue in this motion.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).[1]

---

[1] Defendant also moves pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Plaintiff's first claim is time-barred under the applicable statute of limitations, 28 U.S.C. § 2401(a). Mot. 11-12. However, section 2401(a) is not jurisdictional. *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cr. 1997). Accordingly, Defendant's timeliness argument must be evaluated under the Rule 12(b)(6) standard.

### III. DISCUSSION

"The APA requires agencies to advise the public through a notice in the Federal Register of the terms or substance of a proposed substantive rule, allowing the public a period to comment." *Erringer v. Thompson*, 371 F.3d 625, 629 (9th Cir. 2004) (citing 5 U.S.C. § 553(b), (c)). This is known as APA's "notice-and-comment" requirement. *Id*. The notice-and-comment requirement does not apply to "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," or where the agency publishes a finding of good cause that notice-and-comment is "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(A), (B).

Here, the complaint alleges that the *Kazarian* policy "is the sub-regulatory adoption of a substantive rule in violation of the APA and INA." Compl. 13. Specifically, it alleges that the "final merits determination" requirement is an improperly promulgated legislative rule, rather than a statement of policy, because it "amends a previous legislative rule." *Id*. at 15, ¶¶ 57, 70. According to Plaintiff, the final merits determination "increases the evidentiary requirements of 8 U.S.C. § 1153(b)(1)(B) by requiring [petitioners] to not only fulfill the statutory and regulatory requirements by a preponderance of the evidence, but also to satisfy a discretionary, impermissibly vague and undefined 'eyeballing' of the petition as to whether or not the beneficiary is 'outstanding.'" *Id*. at ¶ 61. Accordingly, it alleges that USCIS "used a Policy Memorandum to impose novel and additional requirements on immigrant visa applicants" without complying with the notice-and-comment requirements for rulemaking. *Id*. at ¶¶ 69, 92.

Defendant moves to dismiss claim one, arguing that the *Kazarian* policy is "widely accepted" and "was lawfully adopted without a notice-and-comment rulemaking process because it is not a legislative rule." Mot. 7. According to Defendant, the *Kazarian* policy "is an interpretive rule." *See* Reply 3. It notes that the Ninth Circuit recently held that the two-step test for evaluating a petition for noncitizens of extraordinary ability "is not a new, unlawful rule, but is well-established in the applicable visa regulations, legislative rules, and case law." *Arbor Home, LLC v. Mayorkas*, No. 22-16081, 2023 WL 4819647, at *1 (9th Cir. July 27, 2023) (citations omitted). *See Arbor Home, LLC v. Mayorkas*, 604 F. Supp. 3d 878, 888-89 (N.D. Cal. 2022)

(granting summary judgment on plaintiff's claim challenging denial of petition to classify employee as a nonimmigrant of extraordinary ability at second step of *Kazarian* analysis).[2]

The government also cites *Amin v. Mayorkas*, 24 F. 4th 383, 388-89 (5th Cir. 2022), in which the Fifth Circuit considered a plaintiff's challenge to the denial of his petition for an extraordinary ability visa. As is the case here, the plaintiff argued, among other things, that "the Policy Memo is invalid because it was issued without notice and comment." *Id*. at 391. The court held that USCIS's review process as set forth in the Policy Memo "is consistent with the governing statute and regulation." *Id*. at 391-92. The court explained that 8 C.F.R. § 204.5(h)(3)'s description of the regulatory criteria as "initial evidence," alongside the requirement that the petitioner "must submit evidence of 'at least three' criteria . . . contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more?" *Id.* at 391.

*Amin* also held that the Policy Memo was "not a legislative rule subject to the notice-and-comment requirement" because it "does not create legal rights or obligations" on the part of visa applicants. *Id*. at 392 (citing *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (setting forth a two-part rule to determine whether a rule is legislative, including "whether the rule . . . imposes any rights and obligations" (cleaned up)). The court reasoned that "[t]he Policy Memo does not impose any obligations on visa applicants." *Id*. Rather, "[t]he statute and regulation require applicants to prove their extraordinary ability and to provide 'extensive documentation' of the type listed in the regulation. The Policy Memo does not require anything more; it merely clarifies the order in which agency adjudicators evaluate the evidence." *Id*.

District courts in other circuits have similarly held that USCIS's adoption of the *Kazarian* policy was lawful and did not require a notice-and-comment period. *See, e.g., Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 770-75 (N.D. Ind. 2023) (holding that the "two-part *Kazarian* analysis is consistent with both the statute and the regulation" and that the policy manual "set forth

---

[2] Although *Arbor Home* involved an extraordinary ability petition and not an outstanding professor or researcher petition, the petitioner in *Arbor Home* challenged the two-step *Kazarian* framework that is set forth in the Policy Memo. *See Arbor Home*, 604 F. Supp. 3d at 886-87.

an interpretive rule clarifying the sequence in which agency adjudicators evaluate evidence" and thus did not require a notice-and-comment period); *Etsy, Inc. v. Jaddou*, No. 4:22CV3022, 2023 WL 3689555, at *20-23 (D. Neb. May 25, 2023) (holding that the *Kazarian* Policy "is an 'interpretive' rule" and not a legislative rule improperly adopted without notice-and-comment); *Biyani v. United States Citizenship & Immigr. Servs.*, No. 4:22CV3032, 2022 WL 17326211, at *5-7 (D. Neb. Nov. 29, 2022) (rejecting plaintiff's claim that the Policy Memo "is contrary to the statutory and regulatory scheme, and that it was implemented without notice and comment").

The government argues that "[t]here is no meaningful distin[ction]" between Plaintiff's challenge to the *Kazarian* policy and the challenges considered by other courts. Mot. 1, 9. It asks the court to find these opinions persuasive and dismiss claim one for failure to state a claim.

In opposition, Plaintiff distinguishes *Arbor Home* on the ground that the case does not address Plaintiff's argument here, that the *Kazarian* policy is a legislative rule subject to the notice-and-comment requirement. It also notes that the Ninth Circuit did not elaborate on its holding that the *Kazarian* policy "is not a new, unlawful rule, but is well-established in the applicable visa regulations, legislative rules, and case law." Opp'n 3-4 (citing *Arbor Home*, 2023 WL 4819647, at *1).

Plaintiff next argues that Defendant fails to address "whether the final merits determination [requirement] amends a previous legislative rule" under the applicable Ninth Circuit test set forth in *Erringer*, 371 F.3d at 630, which it describes as "the crux of Count I of Plaintiff's Complaint." Opp'n 5.[3] Plaintiff notes that none of the cases cited in Defendant's motion applied *Erringer* to determine whether the *Kazarian* policy is a legislative rule subject to the notice-and-comment requirement and asks the court to do so. *Id*.

The Ninth Circuit has explained that "[i]n general terms, interpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Erringer*, 371 F.3d at 630 (quoting

---

[3] The complaint alleges that the *Kazarian* policy "amends a prior legislative rule." Compl. 15, ¶¶ 54, 68.

8

*Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003)). "[L]egislative rules have the 'force of law,' while interpretive rules do not." *Id*. (quoting *Hemp Industries*, 333 F.3d at 1088). The court uses a three-part test for determining whether a rule has the "force of law," as follows: "(1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule." *Id*. (quoting *Hemp Industries*, 333 F.3d at 1088).

Although Plaintiff faults Defendant for failing to address *Erringer*, Plaintiff suffers from the same problem; its opposition brief does not apply *Erringer* to the case at hand. In relevant part, *Erringer* says "[a]ny rule that effectively amends a prior legislative rule is legislative and must be promulgated under notice and comment rulemaking." *Erringer*, 371 F.3d at 632. "The reasoning is that '[a]n agency is not allowed to change a legislative rule retroactively through the process of disingenuous interpretation of the rule to mean something other than its original meaning." *Id*. (quoting *Hemp Industries*, 333 F.3d at 1091). "[A] rule is considered legislative under the 'amends a prior legislative rule' test 'only if it is inconsistent with another rule having the force of law." *Id*. (quoting *Hemp Industries*, 333 F.3d at 1088).

A fundamental problem is that Plaintiff does not clearly identify the prior legislative rule that purportedly was amended by the *Kazarian* policy. This alone is fatal to its argument. It is possible that Plaintiff is relying on a case cited in its complaint, *Buletini v. INS*, 860 F. Supp. 1224, 1234 (E.D. Mich. 1994), as embodying a prior legislative rule. The complaint alleges that *Buletini* states USCIS's prior analysis to determine whether a petitioner satisfied the extraordinary or outstanding professor and researcher visa requirements. *See* Compl. ¶¶ 37, 60, 62. In *Buletini*, the court reviewed the Immigration and Naturalization Service's denial of an individual's extraordinary ability visa petition. 860 F. Supp. at 1224. The court held that the denial was arbitrary, capricious, and an abuse of discretion. *Id*. at 1234. In relevant part, the court considered the agency's determination that "[t]he submission of documentation to satisfy three or more of the criteria contained in 8 C.F.R. § 204.5(h)(3) does not necessarily establish eligibility as an alien of extraordinary ability." *Id*. at 1233. The court held that this was an abuse of discretion, and that

9

"[o]nce it is established that the alien's evidence is sufficient to meet three of the criteria listed in 8 C.F.R. § 204.5(h)(3), the alien must be deemed to have extraordinary ability unless the INS sets forth specific and substantiated reasons for its finding that the alien, despite having satisfied the criteria, does not meet the extraordinary ability standard." *Id*. at 1234. According to the complaint, the pre-*Kazarian* standard articulated in *Buletini* "followed the statutory and regulatory scheme of outstanding professor and researcher petitions," and "the *Kazarian* Policy Memorandum reverses prior policy and substantively alters the requirements of 8 C.F.R. § 204.5(i)." Compl. ¶¶ 63, 70.

        Plaintiff's argument that the Kazarian policy amended "the prior legislative rule" as stated in *Buletini* lacks merit. To begin with, Plaintiff admits that *Buletini* "was a district court decision," Compl. ¶ 60, and offers no authority that such a decision is a legislative rule. As the court in *Etsy* observed about *Buletini*, "an out-of-circuit district court decision is a remarkably slender rod to support the proposition that it states the pre-[*Kazarian*] Policy analysis by both the USCIS and the courts." 2023 WL 3689555, at *17. Moreover, Plaintiff "do[es] not contend and cite[s] no evidence that USCIS ever promulgated a rule or adopted a uniform policy embracing *Buletini*." *See id*. (citing *Amin*, 24 F. 4th at 391 n.5). Accordingly, Plaintiff has not shown that there was a "prior legislative rule" in effect that the *Kazarian* policy amended and thus has not established that the *Kazarian* policy constitutes a legislative rule under *Erringer*, subject to notice and comment rulemaking. *See Erringer*, 371 F.3d at 632. Plaintiff offers no other argument that the APA's "notice-and-comment" requirement applied to the *Kazarian* policy under the test set forth in *Erringer*. Claim one is dismissed with prejudice.[4]

//
//
//
//

---

[4] As the court concludes that the first claim fails as a matter of law, it need not reach Defendant's argument that it is barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss claim one is granted. Claim one is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: January 22, 2024



Donna M. Ryu
Chief Magistrate Judge